FILED

2010 Jan-12  PM 12:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| STEVE HARRISON, EMILY FARROW, individually, and on behalf of the Class of Persons Described Herein; | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 7:08-cv-1039-LSC |
| BLOUNT EMS, INC., and NORTHSTAR EMS, INC., and BLUE CROSS AND BLUE SHIELD OF ALABAMA | ) ) ) ) ) | |
| Defendants. | ) ) | |

Memorandum of Opinion

I.    Introduction.

The Court has for consideration a motion filed on June 15, 2009, to certify a class of similarly situated individuals under Federal Rule of Civil Procedure 23.  (Doc. 49.)  Plaintiff Emily Farrow ("Plaintiff") seeks to represent a class of individuals who were covered by a Blue Cross/Blue Shield ("BCBS") health insurance policy, made a claim for payment for

ambulance services provided by Blount EMS., Inc. ("Blount"), and received payment based on an allowable amount ("Allowed Amount") that was less than the total charges made under BCBS codes A0425, A0426, A0427, A0428, A0429, A0433, and A0434 between February 19, 2002 and the present.  BCBS and Blount oppose certification.  The motion for class certification has been briefed by all parties and is now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Plaintiff's motion will be denied.

II.    Facts.

On July 27, 2007, Plaintiff was involved in an automobile accident that required transport by ambulance.   This accident rendered Plaintiff unconscious.  She was therefore unable to agree to the terms of the billing ticket drafted by the ambulance provider, Blount, until some time later when she regained her faculties.

At the time of the accident, Plaintiff was insured under a policy issued by BCBS.  Under her plan, BCBS was required to pay 80% of the amount BCBS determined to be a reasonable charge, the Allowed Amount, for services rendered.  Blount submitted Plaintiff's bill of $760.00 to BCBS.  This bill

consisted of two components: (1) a $460 charge coded ALS1 by Blount for transport; and (2) a mileage charge of $300.00.  These charges fall under BCBS codes A0427 and A0425, respectively.  After application of Plaintiff's deductible, the ambulance transport fee was paid in its entirety.   In reviewing the mileage charge, however, BCBS determined that $240, and not the $300 charged by Blount, was the Allowed Amount.  BCBS paid 80% of that amount as required under its contract.

Plaintiff filed this suit on June 11, 2008.  Plaintiff maintains that Blount is required by Alabama law to charge a reasonable amount for its services.  She further states that BCBS is required under its contract to pay 80% of reasonable charges for medical service.  Plaintiff argues that either Blount overcharged her by $60 or BCBS violated its contract by failing to pay 80% of Blount's reasonable mileage charge of $300.  Plaintiff now seeks to certify a class of herself and similarly situated individuals insured by BCBS who have received ambulance services in the past six years from Blount and have been charged a higher rate by that company than BCBS was willing to pay.

III.    Standard.

Before a district court may certify a class action, "the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). Under Rule 23(a), a class may be certified only if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003).  These four prerequisites are generally known as "numerosity, commonality, typicality, and adequacy of representation." *Id.* at 1188.  While the prerequisites are often discussed in isolation, the inquiries necessary to determine whether they are met tend to overlap.  *See Amchem Prods. v. Windsor,* 521 U.S. 591, 626 n.20 (U.S. 1997) ("The adequacy-of-representation requirement tends to merge with the

commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.") (internal citations omitted).

Class actions that meet the requirements of Rule 23(a) may be certified under Rule 23(b)(1), (b)(2), or (b)(3). *See* Fed. R. Civ. P. 23(b). Plaintiff seeks certification under Federal Rule of Civil Procedure 23(b)(2) and (b)(3). (Doc. 49 at 3.) A class action is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and the class is seeking "final injunctive relief or corresponding declaratory relief." Fed. R. Civ. P. 23(b)(2). Generally, Rule 23(b)(2) requires that the class members must have been harmed in essentially the same way, and injunctive relief predominates over any damages sought. *See Heffner v. Blue Cross & Blue Shield of Ala., Inc.,* 443 F.3d 1330, 1340 (11th Cir. 2006); *Colomar v. Mercy Hosp., Inc.,* 242 F.R.D. 671, 682 (S.D. Fla. 2007); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998); *Maldonado v. Ochsner*, 237 F.R.D. 145, 149 (E.D.

La. 2006).

In order to maintain a class under Rule 23(b)(3), the party seeking certification must prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance requires that the issues raised by the class action "that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (citations omitted). Such an inquiry requires the court to go beyond the pleadings and "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.* at 1234 (citations omitted).

When reviewing a motion for class certification, "[t]he burden of proof to establish the propriety of class certification rests with the advocate of the class." *Vega*, 564 F.3d at 1265. A district court should not certify a class lightly, and a rigorous analysis of the issues and requirements of Rule

23 is necessary.  *Id.* at 1266 (citing *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) ("A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class.")).

IV.   Analysis.

Plaintiff seeks to certify a class under Rule 23(a) and 23(b)(2) or (3) of all persons covered by BCBS insurance between February 19, 2002 and the present who are subject to ambulance charges made by Blount that resulted in underpaid claims made by BCBS under seven charge codes:  A0425, A0426, A0427, A0428, A0429, A0433, and A0434.  (Doc. 49 at 2-3.)  Plaintiff presents the Court with what it claims is a simple dichotomy, writing, "Either: (a) what [Blount] charges is reasonable, and any payments below 80% of that amount do not meet [BCBS]'s contractual obligation; or (b) what [BCBS] has determined to be reasonable for each code is reasonable, in which case the remaining balance to be paid [Blount] is higher than it ought to be."  (Doc. 60 at 2.)  Plaintiff seeks a declaration from this Court as to the reasonable price for each code, an injunction requiring the parties to charge that reasonable fee in the future, and damages incidental to the failure of the parties to either charge or pay a reasonable fee for each code.  *Id.*

Because the central issues and common questions requiring resolution in this matter are highly individualized and not given to class-wide adjudication, the Plaintiff has failed to meet its burden for class certification.

A.     Requirements under Rule 23(a) — Numerosity.

A threshold finding of numerosity is a low bar to meet, and "where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity . . . The wise practice is to allow such cases to proceed, at least at the onset, as class actions." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).  The Plaintiff has shown sufficient evidence to show numerosity and this element of class certification is met.[1]  *See* Doc. 50, Ex. O.

B.     Requirements under Rule 23(a) — Commonality.

"Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof."  *Vega*, 564

---

[1] Defendant does not appear to contest the existence of numerosity.  (Doc. 57 at 47-48.)  The Court notes, however, that its findings may serve to so reduce the number of individuals in any possible class that numerosity might be an issue in a future, reconstituted motion for class certification.

F.3d at 1270.  Commonality is a relatively low threshold and should not be confused with the predominance inquiry — all that is required of 23(a)(2) is that there be "at least one issue whose resolution will affect all or a significant number of the putative class members."  *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009).  There is no requirement, however, that "all the questions of law and fact raised by the dispute be common."  *Vega*, 564 F.3d at 1268.

Plaintiff claims that, at its heart, this "is a breach of contract case." (Doc. 50 at 46.)  Blount has an implied contract with the users of its ambulance services and is entitled to a reasonable fee for its services. *Shellnut v. Randolph County Hospital*, 469 So. 2d 632, 633 (Ala. Civ. App. 1985) ("Where . . . there is no evidence of an express contract, an agreement is implied that a hospital will render services and in return receive a reasonable fee for these services.").  Plaintiff has an express contract with BCBS to pay "80% of the Allowed Amount" of ambulance services.  (Doc. 50, Ex. H at 8.)

The seven charge codes targeted by Plaintiff can be divided into two groups.  A0425 is a mileage charge and relates purely to the number of miles

the ambulance run in question covers.  (Doc. 50, Ex. A, Smelley Depo. at 66:21-67:11.)  The remaining charge codes—A0426, A0427, A0428, A0429, A0433, and A0434—are referred to as transport codes and are intended to reimburse the ambulance company for medical services rendered.  (Doc. 50, Ex. A, Smelley Depo. at 68:16-71:16.)

Plaintiff was charged under A0425 and A0427 for her ambulance run. Plaintiff essentially maintains that since the charge by Blount and the Allowed Amount by BCBS are not the same for her mileage charge under A0425, either Blount or BCBS has violated their respective contracts with Plaintiff.[2]  Furthermore, Plaintiff has provided to this Court evidence, in the form of a lengthy spreadsheet, of disparities across the proposed class between the charges made by Blount under the seven codes at issue and the Allowed Amount paid by BCBS.  (Doc. 50., Ex. O.)  According to Plaintiff, the common question is then which party correctly established a reasonable price.  Plaintiff writes, "If [Blount] is right, then Ms. Farrow's balance is $48.00 too high, and if [BCBS] is right, then Ms. Farrow's balance is $60.00

_____

[2] Interestingly, and importantly for the typicality analysis below, the charged amount and Allowed Amount for Plaintiff under A0427 are the same.

too high."  (Doc. 60 at 14.)  If this were true, the Court would only need to determine whether Blount or BCBS establishes the proper amount and then apply that finding across the class.  Upon closer inspection, however, the issue of which defendant charged a reasonable amount is not subject to common proof.

Despite the low commonality threshold, it appears to this Court that Plaintiff is unable to show how any of the disputed issues in this matter are subject to common resolution.  Plaintiff argues that since Blount and BCBS use a common formula to establish the charged rate and Allowed Amount under both sets of codes, the reasonableness of those figures is subject to common proof.  Plaintiff has gone as far as to produce a chart showing how easily the various figures can be adjusted, noting, "Any number can simply be plugged into the formula Mr. Fisher used in Fisher Aff. 2.  No 'herculean task'  of individually computing relief exists."  (Doc. 60 at 15.)  This assurance assumes, however, that findings regarding the Plaintiff and individual class members indicate anything regarding the reasonableness of the charges made by Blount or the Allowed Amount calculated by BCBS for other class members.

Even if this Court determined that Plaintiff was overcharged by 10% or that the Allowed Amount was 10% too low, that finding would not justify a finding that any other class plaintiff was likewise injured.  Other courts faced with similar attempts to certify a class have recognized this fundamental limitation.  In *Colomar v. Mercy Hospital, Inc.*, a court in the Southern District of Florida was faced with a motion for class certification claiming that a group of uninsured patients were charged "an unfairly high price for Medical services they received from Mercy."  242 F.R.D. 671, 673 (S.D. Fla. April 11, 2007).  Despite noting the relatively low bar imposed by the commonality requirement, the court nevertheless determined that the plaintiff "has failed to identify any common questions of law or fact."  *Id.* at 677.  More specifically, the Court found,

> [T]he legality-or ultimate reasonableness-of Mercy's charges can only be determined by looking at the specific bills in question and analyzing them against factors like the market rate for the same services at other hospitals, Mercy's internal costs for those particular services, and the prices Mercy charged for those services to patients with health insurance or other benefits. None of the evidence underlying these factors will be the same for any two class members, unless they received the same services during a similar time frame. Therefore, at the level of specificity required to actually resolve the class claims, any commonality breaks down into an individualized inquiry. Simply

put, the "legality" of Mercy's conduct vis-a-vis the potential class members is "common" only at a very high level of abstraction.

*Id.* at 676-77.

Recently, the Alabama Supreme Court, in rejecting a motion for class certification, recognized that determining a reasonable charge for medical services "will require an examination of the circumstances of the charges for the services, the customs in the medical-service community, the price a willing provider would take for its services, and the price a recipient of those services would pay." *Eufaula Hosp. Corp. v. Lawrence*, 2009 Ala. LEXIS 208 *44 (Ala. Sept. 11, 2009). The court further stated, "We agree that such determinations are 'necessarily an individual inquiry that will depend on the specific circumstances of each class member, the time frame in which care was provided, and both the defendant's and other hospitals' costs at that time.'" *Id.* at *44-45 (citing *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007)).[3]

_____

[3] Plaintiff argues that *Colomar* and *Eufaula Hospital Corporation* are inapposite as those cases involved "thousands of charge codes, brought by uninsured patients" whereas this matter relates to "seven ambulance codes brought by people with health insurance." (Doc. 60 at 6) (emphasis in original). Plaintiff misses the point. Even if only one code were at issue, if there are no common questions that, if

This Court finds the reasoning of these other courts to be persuasive, and Plaintiff has failed to show how the proposed class can avoid the individualized inquiries that will necessarily destroy class certification. Both Blount and BCBS use a standard formula to determine the value of both the mileage and transport charges made to their clients. *See* Doc. 50, Ex. Q; Doc. 50, Ex. A, Smelley Depo. at 72-80. The heart of Plaintiff's claim is that one or both of these formulas has produced unreasonable figures to the detriment of class members. One need only examine the type of evidence that the Court would be required to consider in adjudicating the individual class members' claims to understand the absence of commonality in this matter. Consider first the mileage charge. Even reviewing Blount's explanation of what the mileage charge is meant to encompass begins to reveal the problem faced by Plaintiff. In his deposition, the President of Blount noted, "As a general rule, mileage charges in the ambulance industry are meant to reflect the cost of the vehicles, the fuel, the insurance, the wear and tear. Vehicle costs in theory." Doc. 50, Ex. A, Smelley Depo. at

---

answered, help to determine the reasonableness of charges made to each class member, then Plaintiff has failed the commonality test.

60:19-23.   None of these factors, each of which would be important in determining the reasonableness of any particular mileage charge to any particular class member, is constant or common.   Rather, they are all variable.  The price of fuel, for instance, might vary from day to day, and has no doubt fluctuated wildly over the relevant period stretching back to 2002.   Other variable factors that might go to determining the reasonableness of any particular class members' mileage charge include the weather at the time of the ambulance run, idling time of the vehicle, time required for the run, the time of day or night of the run, and the age and value of the vehicle used.  As for the remaining six transport codes, each of which relate to the specific medical treatment received by each class member, the variableness of the factors required to determine the reasonableness of each class members' charge would be overwhelming.  The Court would be required to look to the amount of time required for treatment, the number and type of supplies used during that treatment, the symptoms and severity of the party's injuries, the level of expertise required to care for those injuries, the proximity to a facility qualified to handle those injuries, and any number of other factors that impact upon the

treatment provided during an ambulance run.[4]  The accumulation of this evidence may determine the reasonableness of the charges made to a particular class member, but it will establish nothing regarding any other class member.  Even under the relatively low bar of the commonality requirement, Plaintiff has failed to carry her burden and class certification is inappropriate.

C.      Requirements under Rule 23(a) — Typicality.

The Eleventh Circuit has held, "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Vega*, 564 F.3d at 1275 (citations omitted). Typicallity and Commonality have much in common, but whereas "commonality refers to the group characteristics of the class as a whole,"

_____

[4] In support of BCBS's opposition to Plaintiff's motion for class certification, BCBS produced an affidavit by Leigh Stevens enumerating many of the factors that may be necessary to calculate a reasonable charge for ambulance services on an individual basis.  *See* Doc. 57, Ex. A.  Plaintiff filed a motion to strike arguing that the enumeration of these factors is inconsistent with Stevens's earlier deposition testimony regarding the standard formula presently used to calculate the Allowed Amount.  (Doc. 59.)  This motion is DENIED.  There is no contradiction between Stevens's testimony as to BCBS's current practice and her testimony as to what would be required to determine a reasonable amount in the absence of that standard formula.  Furthermore, the Court notes that the factors that determine the reasonableness of a fee can be enumerated purely on the basis of common sense.

typicality "refers to the individual characteristics of the named plaintiff in relation to the class." *Id.* at 1275 (citations omitted).  The test for same interest and injury is broader than it may first seem, and it is not necessary that they be exactly the same as those of the other class members.  *See Warehouse Home Furnishing Distribs. v. Whitson*, 709 So. 2d 1144, 1149 (Ala. 1997) ("The essence of the typicality requirement is that the relationship between the injury to the class representative and the conduct affecting the entire class of plaintiffs must be sufficient for the court to properly attribute a collective nature to the challenged conduct.").  In other words, "[t]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (citations omitted); Colomar, 242 F.R.D. at 677 ("Thus, typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case.").  Finally, a "factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337

(11th Cir. 1984).

Plaintiff faces several obstacles that prevent her from satisfying the typicality requirement of Rule 23.  First, Plaintiff is suing over charges made under BCBS codes A0425, A0426, A0427, A0428, A0429, A0433, and A0434 between February 19, 2002 and the present.  (Doc. 49 at 2-3.)  Plaintiff, however, only claims injury under A0425 for mileage charges and A0427 for transport services.  (Doc. 50 at 8.)  The mere fact that Plaintiff is not alleging injury for all seven codes is not itself dispositive.  If, for instance, Plaintiff were claiming that Blount or BCBS inflated all their numbers by 10%, then Plaintiff's injury of being defrauded by 10% would be typical of all the members of the class.  In the present matter, however, no such allegation is made.  Instead, each code has a unique formula that is used to determine the relevant amount, and Plaintiff is merely claiming that in certain instances an unreasonable amount was generated by that formula.

To find the Allowed Amount for its codes, BCBS uses a multi-step process in which BCBS determines the code's median charge for the previous 12 months from local ambulance providers, multiplies that figure by the total number of services for each charge, divides that product by the

relative value unit ("RVU") established by Medicare for the code in question, derives a conversion factor for the code, and then multiplies that factor by the code's RVU.[5]  *See* Doc 50, Ex. Q.  This rather complicated formula produces the Allowed Amount.  Blount uses a less complicated formula in which Blount reviews the costs for each code and then establishes a margin of profitability.  *See* Doc 50, Ex. A, Smelley Depo. at 72-80.

Employing different approaches, Blount and BCBS each generate unique formulas for each procedure code.  It is therefore difficult to imagine how Plaintiff, even if she is able to show that the formulas for A0425 and A0427 produce unreasonable figures, could translate that success to a showing that the results of the other unique formulas under codes that do not apply to Plaintiff are also unreasonable.  The district court reached a similar conclusion in *Colomar*, writing, "That the contract between Mercy and Plaintiff contains the same undefined price term as the other class members does not automatically make the Plaintiff's and the class members' interests the same.  Granted, Plaintiff and the proposed class

---

[5] Because there is no Medicare RVU for mileage, BCBS arrays the median mileage charge for all providers and takes the 75th percentile as the Allowed Amount. *See* Doc. 50, Ex. Q.

members share a broad interest in paying only reasonable charges.  But the similarities end there." *Colomar*, 242 F.R.D. at 677.  The court came to the common-sense conclusion that proving the unreasonableness of the hospital's charges for respiratory service would require a fact-intensive review of that service, one that would "not prove anything about the reasonableness of Mercy's cardiac services, to take one example." *Id*.  The same logic holds true in the instant matter.

Even if Plaintiff can show that the rate charged by Blount and the Allowed Amount developed by BCBS is unreasonable as to her unique and fact-specific circumstances, she can show nothing about the other relevant codes. At best, Plaintiff might maintain a class action under codes A0425 and A0427.[6]  But even at the level of these two codes, the typicality argument breaks down.  While Plaintiff discusses A0427 throughout her brief and often conflates the two codes when discussing the billing practices of Blount and BCBS, there is a fundamental factual distinction between A0425

---

[6]  BCBS has noted that the formula used to calculate the mileage charge, A0425, has changed since 2005, casting serious doubt on Plaintiff's ability to represent parties whose charges were made before 2005.  *See* Doc. 57, Ex. A.  As the Court is not satisfied that Plaintiff can show typicality even as to the code charges that were made to Plaintiff, there is no need to address this deficiency.

and A0427; while the Blount charge and BCBS Allowed Amount differ for A0425, there is no such difference for A0427, the transport charge.  BCBS payed 80% of the charged amount for A0427, just as required by its contract with the Plaintiff.  *See* Doc. 50, Ex. J.  Under Plaintiff's own formulation of the class, Plaintiff would not be a member of a class consisting of individuals treated under A0427.  *See* Doc. 50 at 20 ("Of course, when the difference is zero, the person is not a class member.")

Plaintiff's only connection to the other class members, therefore, is through A0425, the mileage charge.  As discussed in more detail above, any determinations made about this code have no bearing whatsoever on the various transport codes.  The very facts of this case—that BCBS's Allowed Amount was the same as Blount's charged amount for the transport code but not the mileage code—bear that out.  This fact is further supported by the unique way in which the mileage code is created.  The transport codes have Medicare RVU's to assist BCBS and Blount in the task of assessing reasonable fees.  The mileage code has no such guideline.  *See* Doc. 50, Ex. Q.  The factual differences between the mileage code and transport codes are simply too great to provide a sufficient nexus to meet the typicality

standard.

Finally even as to the mileage code itself, as explained in the above commonality analysis, Plaintiff's claims are not typical.  The only way to determine if a charge is reasonable or not is to look at the unique circumstances surrounding each ambulance run.  The legal and factual determinations necessary to determine the validity of Plaintiff's mileage claim are simply unrelated to those of the other members of the purported class, even those who may have been charged under the same code at similar times.   Plaintiff has failed to provide this Court with a common nexus sufficient to tie these varying claims together.  Therefore, the Court finds that the purported class fails the typicality requirement.

D.    Requirements under Rule 23(a) — Adequacy.

The Supreme Court has written, "The adequacy inquiry under Rule23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods.*, 521 U.S. at 625-26 (citations omitted). This requirement seeks to ensure that the named plaintiff will have the

proper incentives to vigorously pursue the claims of all class members.  *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003) (citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) for the proposition that the "incentives of the class representative must align with those of absent class members so as to assure that the absentees' interests will be fairly represented").  The Eleventh Circuit has recognized that the named plaintiff cannot be expected "to assert with forthrightness and vigor those interests of other class members that he does not share and in which he has no stake.  Indifference as well as antagonism can undermine the adequacy of representation."  *Lyons v. Georgia-Pacific Corp. Salaried Emples. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000).

As should be evident from the Court's discussion under the Commonality and Typicality analysis, there are fundamental problems with Plaintiff's ability to represent the interests of all the class members.  Plaintiff has stated that she seeks "a declaration as to a reasonable price for each code."  (Doc. 60 at 2.)  Plaintiff, however, was only charged under A0425 and A0427 and has claimed injury only under the former.  It is therefore her paramount interest to show that either the charges made

against her under those two codes or the Allowed Amounts for those codes were unreasonable.   It is unclear what interest she has in proving reasonableness in regards to the other five codes at issue.  As stated earlier, this is not a case where Plaintiff's vigorous assertion of violations of her own rights—that she and all other members were overcharged 10% regardless of code for instance—will necessarily vindicate those interests of the other class members.   Plaintiff may fully prove her case and show nothing regarding the vast majority of class members.  Therefore, Plaintiff has failed to meet the adequacy requirement necessary to grant certification of the current class.

     E.    Requirements of Rule 23(b)(2).

Even if Plaintiff were able to meet the requirements of Rule 23(a), she must also establish that class certification is appropriate under one of the subcategories of Rule 23(b).[7]   Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

---

[7] Plaintiff has not moved to certify the class under Rule 23(b)(1).  (Doc. 49.)

Fed. R. Civ. P. 23(b)(2).   The Eleventh Circuit and other courts have interpreted Rule 23(b)(2) to require that the claims of members be "class claims, claims resting on the same ground and applying more or less equally to all members of the class." *Heffner*, 443 F.3d at 1344.  It follows that the forms of relief available to class members "are in the nature of group remedies that benefit the entire class." *Id.* at 1345.  While monetary relief is not inappropriate when class certification is based on Rule 23(b)(2), injunctive relief must predominate. *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001).

In *Auslander*, the Eleventh Circuit expounded on when "monetary damages are incidental to equitable relief."  *Id.* at 812.  In doing so, it looked to the Fifth Circuit, quoting, "Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established . . . . Liability for incidental damages should not . . . entail complex individualized determinations." *Id.* at 812 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) ("Moreover, such damages should at least be capable of computation by means of objective standards and not dependent

in any significant way on the intangible, subjective differences of each class member's circumstances.")).  It should be apparent by this point in this Court's analysis of Plaintiff's motion for class certification that this matter will entail complex individualized determinations.

The court in *Auslander* determined that class certification was not appropriate because the class sought damages "as a remedy to their alleged individual 'pain and suffering, mental anguish, and humiliation.'" *Id*. While the damages in this case are not as personal as those in *Auslander*, they are no less individualized in their nature.  Even if the Court were to certify a class, determining damages for each plaintiff would require a highly individualized review of the circumstances surrounding each plaintiff's particular encounter with Blount.  As the district court in *Maldonado* recognized in rejecting certification under 23(b)(2) for a class seeking a declaration of reasonable charges for medical care, "In order to compensate the plaintiffs for unreasonable, unfair, and excessive amounts, there must be some understanding of what a reasonable and fair amount is. However, the reasonableness of a particular medical fee depends on what is customary in a community for similar services and procedures." *Maldonado v. Ochsner*,

237 F.R.D. 145, 151 (E.D. La. 2006).  As such, in that case as well as here, "Rule (b)(2) certification is inappropriate."  *Id.*

     F.    Requirements of Rule 23(b)(3).

     Certification under Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Predominance is "perhaps the central and overriding prerequisite for a Rule 23(b)(3) class." *Vega*, 564 F.3d at 1278. The predominance inquiry "is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims or defenses of the class." *Amchem Prods.*, 521 U.S. at 623 n.18 (citations omitted).  While there are similarities with the typicality and commonality requirements of Rule 23(a), "the predominance criterion is far more demanding." *Williams*, 568 F.3d at 1357 (citing *Amchem Prods.*, 521 U.S. at 623-24).  Predominance requires a "pragmatic assessment of the entire action and all the issues involved. . . . Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of

individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Williams*, 568 F.3d at 1357 (citations omitted).

In addition to predominance, in order to certify a class under Rule 23(b)(3), the party seeking certification must show that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  There are a four factors that are pertinent to the superiority analysis: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*  But the Eleventh Circuit has recognized, "[L]ack of predominance, of course, effectively ensures that, as a substantive matter, a class action is almost certainly not [superior]." *Vega*, 564 F.3d at 1278 n.18.

It is apparent to the Court that common questions do not predominate

in this matter.  As the Court noted in its commonality discussions, it is difficult to identify any questions whose resolution will affect the class as a whole.  While there are common characteristics to the class—all used Blount, all had BCBS policies, all charges fell under one of the seven relevant codes—the questions that must necessarily be answered in order to determine if the class members were charged a reasonable fee for ambulance services and if the BCBS Allowed Amount was reasonable are necessarily specific to the individual class members.  As the Fifth Circuit noted in *Maldonado*, "[T]he reasonableness of medical fees depends on multiple factors, including the services rendered, patient's financial status, and customary fee for similar services. . . ." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007).  Such is the case here, and it is evident that given these factors and the diverse experiences of the class members, the predominance standard has not been met.

Furthermore, it is clear that in a case such as this, where individual circumstances will determine the liability of the defendants, the class action is not a superior form in which to adjudicate the issues.  The Court cannot sacrifice the fair adjudication of each parties' case in the pursuit of

efficiency.

V.     Conclusion.

Having considered Plaintiff's arguments in full, it is apparent to this

Court that class certification would be inappropriate.  Therefore, Plaintiff's

motion for class certification is due to be denied.  A separate order will be

entered.

Done this 12th day of January 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**